# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MAURICE BROOKS, #B55715,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 25-cv-01651-RJD |
| | ) |
| **ANTHONY WILLS,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Maurice Brooks, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He claims he was housed in an unsanitary segregation cell where he was not permitted to exercise his bad knee and was improperly subjected to disciplinary sanctions. (Doc. 1). He seeks monetary damages.

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A,[1] which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Between June and December 2024, Plaintiff was in restrictive housing in Menard's North 2 wing, in 5 gallery and 2

---

[1] The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 5), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the IDOC.

1

gallery. (Doc. 1, pp. 5-6). The cells were contaminated with human waste in the vents and on the beds. Plaintiff was also forced to breathe in smoke because officers gave matches to fellow inmates which they used to start fires. Plaintiff was denied all opportunity for out-of-cell recreation and exercise while in restrictive housing. He wrote multiple grievances and request slips to Defendant Warden Wills about these conditions, explaining that he has medical issues with his knee that requires him to exercise the knee by walking and his galleries (both galleries 2 and 5) were not being allowed to go to yard. Plaintiff's requests informed Wills that the cells in North 2 are too small for him to properly exercise his knee. Plaintiff suffered knee pain and possible long-term injury from the lack of exercise. (Doc. 1, pp. 5-7). Wills never responded to the request slips or grievances. The grievances over denial of yard and the contaminated cells and air "came back to [Plaintiff] unanswered." (Doc. 1, p. 6).

Plaintiff separately wrote grievances over a C-grade disciplinary sanction which prevented him from contacting his family. (Doc. 1, pp. 6-7). His appeal resulted in Springfield IDOC officials lifting the C-grade punishment. However, Wills failed to remove that sanction despite Plaintiff's multiple requests and orders from Springfield to remove it. Plaintiff was forced to endure the entire duration of the C-grade punishment.[2]

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

>   Count 1:    Eighth Amendment deliberate indifference claim against Wills for housing Plaintiff in cells contaminated with human waste and where the air was contaminated with smoke.
>
>   Count 2:    Eighth Amendment deliberate indifference to serious medical needs claim against Wills for denying Plaintiff all out-of-cell exercise from June 2024 through December 2024, despite his need to walk because of his knee condition.

---

[2] Plaintiff's attached documents indicate the C-grade demotion was for three months. (Doc. 1, pp. 13, 16).

2

> Count 3: Fourteenth or Eighth Amendment claim against Wills for failing to remove the C-grade sanction after higher officials ordered it removed.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[3]

## Discussion

### Count 1

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To state an Eighth Amendment claim for unsanitary conditions of confinement, Plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety (the objective element). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). He must also sufficiently plead that the defendant exhibited deliberate indifference to a substantial risk of serious harm to the inmate, despite the defendant's knowledge of the bad conditions. *Farmer*, 511 U.S. at 837, 842.

A cell contaminated with human waste can present an excessive risk to the inmate's health and deprive him of the basic human need for sanitation. *Id.*; *see also Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013). The Complaint satisfies the objective component of an Eighth Amendment claim as to the human waste contamination. Exposure to second-hand cigarette smoke may support an Eighth Amendment claim based on a present injury and/or an unreasonable risk of future injury. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) *cert denied*, 530 U.S. 1244 (2000); *Helling v. McKinney*, 509 U.S. 25 (1993). While Plaintiff's claim is based on

---

[3] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

exposure to smoke from burning unknown substance(s) other than cigarettes, the Court accepts at this stage that breathing such smoke may be a health hazard and this portion of the claim is also sufficiently pled.

As for the subjective component, Plaintiff asserts that he repeatedly wrote to Wills about these conditions, but Wills failed to respond or take action to mitigate the problems. Count 1 may therefore proceed against Wills.

**Count 2**

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* An objectively serious condition includes a condition that significantly affects an individual's daily activities or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it." *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). The inability to exercise may amount to a constitutional violation where it threatens an inmate's health. *See Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (cumulative effect of repeated lockdowns deprived plaintiff of yard privileges, and cell was too small for physical activity); *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001).

Here, Plaintiff alleges that his knee condition was exacerbated by the lack of exercise, for a period of six to seven months. He asserts that Wills knew about this condition and the exercise denial via his written communications. Plaintiff has sufficiently pled a deliberate indifference

claim in Count 2, which will proceed against Wills.

### Count 3

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Plaintiff claims he was demoted to C-grade and Wills failed to remove that sanction even though he was ordered to do so. However, this allegation does not present a viable constitutional claim, as there is no protected liberty interest in avoiding a demotion to C-grade status. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein). Nor does the time Plaintiff spent on C-grade rise to the level of an Eighth Amendment claim for cruel and unusual punishment. *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (temporary withdrawal of visitation privileges as disciplinary measure does not depart from accepted standards for conditions of confinement). Therefore, Count 3 will be dismissed for failure to state a claim upon which relief may be granted.

### **Pending Motion**

Plaintiff's Motion for Appointment of Counsel (Doc. 2) is **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to secure counsel on his own and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff has not demonstrated any efforts made to obtain counsel on his own. Moreover, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. *See Kadamovas v. Stevens*,

706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged.").

Should Plaintiff encounter difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he renews his request, he should submit at least three rejection letters from attorneys to show that he has made reasonable efforts to obtain counsel on his own.

## Disposition

The Complaint states colorable claims in Counts 1 and 2 against Wills. Count 3 is **DISMISSED** without prejudice.

The Clerk shall prepare for Anthony Wills: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the

6

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendant need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  December 22, 2025**

*s/ Reona J. Daly*
**REONA J. DALY**
**United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an

appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.